UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 11-80493-Civ-SCOLA

LESLIE ROSENWASSER,

    Plaintiff,
vs.

ALL SCRIPTS HEALTHCARE, LLC,

    Defendant.
_____/

## ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**THIS MATTER** is before the Court on the Defendant's Motion For Summary Judgment (ECF No. 88). Upon review of the parties' arguments, the record, the relevant legal authorities, and for the reasons explained in this Order, summary judgment is denied.

### I. BACKGROUND

This is an employment discrimination case. The Plaintiff, Leslie Rosenwasser, claims that her former employer, Allscripts Healthcare, LLC, discriminated against her on the basis of her gender, religion and age, and further retaliated against her after she complained about the alleged discriminatory practices. Rosenwasser also claims that Allscripts violated the Equal Pay Act by paying female employees less than it paid similarly situated male employees. Allscripts has moved for summary judgment as to Rossenwasser's claims for gender discrimination, religious discrimination, age discrimination, violation of the Equal Pay Act, and retaliation.

Allscripts sells technology solutions (*e.g.*, software and hardware) to healthcare organizations. Rosenwasser was hired by Allscripts in 2007 as a salesperson. In 2009, she was placed on a Performance Improvement Plan because she had weak sales and had failed to meet the minimum number of required sales contacts that would generate a pipeline of future work. In April 2010, Mike Schiller was hired as Allscripts Assistant Vice President of Sales, and he became Rosenwasser's manager. In September 2010, Schiller gave Rosenwasser an "inconsistent" rating on her performance review, noting her lack of sales and her co-workers' complaints concerning her attitude. After receiving the "inconsistent" performance review, Rosenwasser was presented with the option of going on a Performance Improvement Plan to taking an enhanced severance package.

There is some dispute how Rosenwasser initially reacted to this choice. Allscripts claims that she ceased virtually all communication with Allscripts and failed to communicate with her/Allscripts's clients. Rosenwasser claims that she did not stop working, nor did she fail to communicate with either Allscripts or clients. On October 15, 2010, Rossenwasser filed her first charge of discrimination against Allscripts.

Ultimately, Rossenwasser decided to go on a Performance Improvement Plan in lieu of taking the severance package. In late December 2010, Schiller issued to Rossenwasser her Performance Improvement Plan; by this time Rossenwasser had not made a sale in nineteen months. Rossenwasser complained that the Plan's goals would be too hard to meet, and in response Schiller modified the Plan. In April 2011, Schiller recommended terminating Rosenwasser because she had gone twenty-two consecutive months without making a sale and her pipeline of potential future sales was weak.

Rossenwasser contends that Schiller was often rude and hostile toward her, and that he decided to get rid of her almost as soon as he began working at Allscripts. Through a series of comparisons, Rossenwasser asserts that she was treated less favorably than other salespersons at Allscripts who were male, and/or younger than her, and/or were not Jewish. She claims that sales opportunities were taken away from her and given to other salespersons, and that she was not given the necessary support and opportunity to succeed. Rossenwasser also asserts that, after she filed her initial charge of discrimination, Allscripts retaliated against her by placing her on an unrealistic Performance Improvement Plan. Rossenwasser further claims that evidence supports her assertions that, on average, saleswomen at Allscripts were paid a base salary that was 16% lower than their male counterparts.

## II. LEGAL STANDARDS

Summary judgment is proper if following discovery, the pleadings, depositions, answers to interrogatories, affidavits and admissions on file show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56. "An issue of fact is 'material' if, under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259-60 (11th Cir.2004). "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Id.* at 1260. All the evidence and factual inferences reasonably drawn from the evidence must be

viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1280 (11th Cir. 2004).

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 323-24. The nonmovant's evidence must be significantly probative to support the claims. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The Court will not weigh the evidence or make findings of fact. *Anderson*, 477 U.S. at 249; *Morrison v. Amway Corp.*, 323 F.3d 920, 924 (11th Cir. 2003). Rather, the Court's role is limited to deciding whether there is sufficient evidence upon which a reasonable juror could find for the nonmoving party. *Id.*

### III. DISCUSSION

**A. There Is a Genuine Issue as To Whether Allscripts Discriminated Against Rossenwasser On The Basis Of Religion, Gender or Age.**

Title VII of the Civil Rights Act of 1964 provides that an employer may not discriminate against an individual with respect to the individual's compensation, terms, conditions or privileges of employment on the basis of the individual's religion or gender. 42 U.S.C. § 2000e-2(a)(1) (2006). The Florida Civil Rights Act of 1992 provides similar prohibitions against employment discrimination, and includes a prohibition against employers discriminating against individuals on the basis of age. Fla. Stat. § 760.10 (2011). The Florida Civil Rights Act is patterned after its federal predecessor, Title VII, and "federal case law dealing with Title VII is applicable" to the [Florida Civil Rights Act]." *Fla. Dept. of Cmty. Affairs v. Bryant*, 586 So. 2d 1205, 1209 (Fla. Dist. Ct. App. 1991). A separate federal law, the Age Discrimination in Employment Act ("ADEA") prohibits employers from discriminating against individuals regarding employment conditions based on an individual's age. 29 U.S.C. § 623(a)(1) (2006). Similar to the Florida Civil Rights Act, claims of discrimination under the ADEA are analyzed under the same rubric as claims brought under the Title VII. *Cofield v. Goldkist, Inc.*, 267 F.3d 1264, 1268 n.6 (11th Cir. 2001). In other words, the same analytical framework is applied to claims of discrimination brought under Title VII, the Florida Civil Rights Act, or the ADEA.

In the absence of direct evidence of discrimination, a plaintiff may establish a claim of employment discrimination through circumstantial evidence.[1] *Knight v. Baptist Hosp. of Miami, Inc.*, 330 F.3d 1313, 1316 (11th Cir. 2003). To evaluate employment discrimination claims, asserted through circumstantial evidence, courts use a burden-shifting rubric established by the Supreme Court. *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1087 (11th Cir. 2004) (citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, (1973) and *Tex. Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248 (1981)).

Under this burden-shifting rubric, a plaintiff must first establish a *prima facie* case of employment discrimination by proving that (1) the plaintiff is a member of a protected class, (2) the plaintiff was subjected to an adverse employment action, (3) the employer treated similarly situated employees, outside of the plaintiff's protected class, more favorably, and (4) the plaintiff was qualified for the position. *Knight*, 330 F.3d at 1316 (citing *McDonnell Douglas*, 411 U.S. at 802-04).

> When the plaintiff establishes a *prima facie* case, which creates the presumption of discrimination, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions. The employer need not persuade the court that it was actually motivated by the proffered reasons. If the employer satisfies its burden by articulating one or more reasons, then the presumption of discrimination is rebutted, and the burden of production shifts to the plaintiff to offer evidence that the alleged reason of the employer is a pretext for illegal discrimination. If the proffered reason is one that might motivate a reasonable employer, a plaintiff cannot recast the reason but must meet it head on and rebut it. Quarreling with that reason is not sufficient. The evidence of pretext may include, however, the same evidence offered initially to establish the *prima facie* case.

*Wilson*, 376 F.3d at 1087-88 (internal citations and quotation marks omitted).

In this case, Allscripts argues that Rossenwasser cannot establish a *prima facie* case of employment discrimination. Allscripts contends that the record evidence reveals that all of Rossenwasser's allegations are either objectively false, or that Rossenwasser was treated the same as similarly situated employees. Allscripts primary argument is that Rossenwasser was

---

[1] "Direct evidence is evidence, that, if believed, proves the existence of a fact without inference or presumption." *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1086 (11th Cir. 2004) (internal quotation marks omitted). Direct evidence of discrimination is defined as "evidence which reflects a discriminatory or retaliatory attitude correlating to the discrimination or retaliation complained of by the employee." *Id.* (internal quotation marks omitted).

terminated because she had gone twenty-two consecutive months without making a sale and her pipeline of future sales was weak.

Rossenwasser responds by presenting evidence that, when taken as true and accepting all reasonable inferences in a light most favorable to Rosenwasser, reveals that she was treated less favorably than similarly situated employees at Allscripts. (*See generally* Rossenwasser Decl., ECF No. 99-1.) Rossenwasser presents evidence that she was given less opportunities to succeed while working for Allscripts. Examples include having a deal that she had worked on taken away from her and transferred to a younger, non-Jewish, male before it could be closed, (*id.* ¶ 9(a); *see also* ¶¶ 9(b) & 9(c)), and not being permitted to sell to existing clients, while other younger, non-Jewish employees were permitted to do so, (*id.* ¶¶ 9(e) – 9(g)). Based on this evidence, Allscripts has failed to meet its burden in moving for summary judgment that there is no genuine issue that Rossenwasser cannot establish a *prima facie* case of employment discrimination.

Allscripts has presented evidence that Rossenwasser was terminated because she had gone twenty-two consecutive months without making a sale and her pipeline of future sales was weak. (Def.'s Stmt. Undisp. Facts ¶ 18, ECF No. 88.) In so doing, Allscripts has met its burden of articulating a legitimate, nondiscriminatory reason for its actions. This shifts the burden back to Rossenwasser to demonstrate that Allscripts "nondiscriminatory reason" is merely a pretext for actual discrimination. *Wilson*, 376 F.3d at 1087-88. On this issue, Rossenwasser presents evidence that a younger, non-Jewish, male employee went longer than her without making a sale but that Allscripts did not terminate him. (Rossenwasser Decl. ¶ 14, ECF 99-1.)

Allscripts argues that this is not a fair comparison because the other employee had potential sales pending, and he was therefore not similarly situated to Rossenwasser. The problem with Allscripts reasoning is that the evidence that Rossenwasser relies on in making her *prima facie* case presents a scenario where she was excluded from potential deals, based on her gender, religion, and/or age. In other words, Rossenwasser contends that one of the reasons that she did not have any potential sales pending is because of Allscripts's discriminatory treatment of her. It is permissible for Rossenwasser's evidence of pretext to include the same evidence offered initially to establish her *prima facie* case. *Wilson*, 376 F.3d at 1088. Since Allscripts has not met its summary judgment burden of demonstrating the lack of a genuine issue over a material fact, Allscripts's summary judgment motion must be denied.

### B. There Is a Genuine Issue as To Whether Allscripts Retaliated Against Rossenwasser Becaused She Filed a Charge Of Discrimination.

It is unlawful for an employer to retaliate against an employee for opposing any unlawful employment practice or for participating in an anti-discrimination proceeding. 42 U.S.C. § 2000e-3(a) (2006) (Title VII); Fla. Stat. § 760.10(7) (2011) (Florida Civil Rights Act).

"To establish a claim of retaliation under Title VII . . ., a plaintiff must prove that he engaged in statutorily protected activity, he suffered a materially adverse action, and there was some causal relation between the two events." *Goldsmith v. Bagby Elevator Co., Inc.*, 513 F.3d 1261, 1277 (11th Cir. 2008) (citing *Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53 (2006)). Again following a similar burden-shifting rubric as in substantive discrimination cases, once a plaintiff has established a *prima facie* case of retaliation, the employer must then present an articulable, legitimate, nonretaliatory reason for the challenged employment action as an affirmative defense to liability. *Id.* The burden then shifts back to the plaintiff to prove retaliation by a preponderance of the evidence and that the reason provided by the employer is a pretext for prohibited retaliatory conduct. *Id.*

In this case, there appear to be two alleged instances of retaliation by Allscripts. The first is Allscripts's decision to place Rossenwasser on a Performance Improvement Plan that included unattainable goals. The second alleged instance of retaliation is Allscripts's decision to reassign two potential deals away from Rossenwasser. (Def.'s Mot. Summ. J. 16-17, ECF No. 88.) Regarding the first, Allscripts argues that it had notified Rossenwasser a month before she filed her first charge of discrimination that she would be placed on a Performance Improvement Plan. (Def.'s Stmt. Undisp. Facts ¶ 9, ECF No. 88.) Rossenwasser responds that regardless of Allscripts's prior intent to place her on a Performance Improvement Plan, when it finally did so, it acted in a retaliatory manner by placing her on a Performance Improvement Plan with goals that were unattainable. (Pl.'s Stmt Facts ¶¶ 62-64, ECF No. 101.) This is sufficient to create a genuine issue over this material fact.

Regarding Allscripts's decision to reassign two potential deals away from Rossenwasser, Allscripts argues that both deals were reassigned by Rossenwasser's supervisor, Schiller, *before* Schiller learned that Rossenwasser had filed a change of discrimination. The two deals at issue are the "EMS deal" and the "FRO deal." Undisputed facts reveal that Schiller reassigned the EMS deal away from Rossenwasser to another salesperson at 2:58 p.m. (EST) on October 15, 2010, (Goff Decl. Ex. 2, ECF No. 112-1), and reassigned the FRO deal away from Rossenwasser

at 4:55 p.m. (EST) on October 15, 2010, (Pl.'s Stmt. Facts ¶ 59, ECF No. 101). However, it is also undisputed that the earliest that Schiller could have been aware of Rossenwasser's charge of discrimination was 6:01 p.m. (EST) on October 15, 2010. (Def.'s Reply, Ex. C, ECF No. 112-3.)

Since Schiller reassigned the EMS and FRO deals away from Rossenwasser before he learned that she had filed a charge of discrimination, Rossenwasser is unable to establish a causal connection between these adverse actions and her engagement in a protected activity. *See Griffin v. GTE Fla., Inc.*, 182 F.3d 1279, 1284 (11th Cir. 1999) ("At a minimum, [a plaintiff] must show that the adverse act followed the protected conduct; this minimum proof stems from the important requirement that the employer was actually aware of the protected expression at the time it took adverse employment action.") (internal quotation marks omitted).

Although Rossenwasser cannot establish that the reassignment of the EMS and FRO deals were actions of retaliation, there is still a genuine issue as to whether Allscripts designed Rossenwasser's Performance Improvement Plan with unattainable goals in retaliation for her filing charges of discrimination. Accordingly, summary judgment is not appropriately granted as to Rossenwasser's retaliation claims.

### C. There Is a Genuine Issue as To Whether Allscripts Violated the Equal Pay Act By Paying Female Employees At a Lower Rate Than Male Employees.

"The Equal Pay Act provides that no employer shall discriminate between employees on the basis of sex by paying employees of one sex at a lower rate than that at which he pays employees of the opposite sex 'for equal work on jobs the performance of which requires equal skill, effort and responsibility, and which are performed under similar working conditions . . . .'" *Mitchell v. Jefferson Cnty. Bd. of Educ.*, 936 F.2d 539, 546-47 (11th Cir. 1991) (quoting 29 U.S.C. § 206(d)(1)).

> A *prima facie* case of an [Equal Pay Act ("EPA")] violation is shown if an employer pays different wages to employees of opposite sexes for equal work on jobs requiring equal skill, effort, and responsibility, and which are performed under similar working conditions. Once a *prima facie* case is demonstrated, to avoid liability the employer must prove by a preponderance of the evidence that the differential is justified by one of four exceptions set forth in the EPA. Those exceptions are: (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex. The employer bears the burden of proof for these affirmative defenses. The burden is a heavy one because the defendants must show that the factor of sex provided *no basis* for the wage differential. If the defendant fails to meet this burden, the court must enter judgment for the plaintiff. When the defendant overcomes the burden, the plaintiff must rebut the

> explanation by showing with affirmative evidence that it is pretextual or offered as a post-event justification for a gender-based differential. If plaintiff is able to create the inference of pretext, there is an issue which should be reserved for trial.

*Irby v. Bittick*, 44 F.3d 949, 954 (11th Cir. 1995) (internal citations and quotation marks omitted).

Rossenwasser has marshaled sufficient evidence to defeat Allscripts's assertion that she cannot make out a *prima facie* case that Allscripts paid different wages to employees of opposite sexes for equal work on jobs requiring equal skill, effort, and responsibility, and which are performed under similar working conditions. (*See* Summ. Comparator Data, ECF No. 99-3.)[2] Further, there are genuine disputes over whether the apparent pay differential at Allscripts is justified by one of the EPA's exceptions. (*See* Pl.'s Resp. 13-14, ECF No. 102; *see also* Pl.'s Stmt Facts ¶¶ 33-36, ECF No. 101.)) For these reasons, summary judgment on Rossenwasser's EPA claim must be denied.

## IV. CONCLUSION

For the reasons explained in above, it is **ORDERED** that Allscript's Motion for Summary Judgment (ECF No. 88) is **DENIED**. Relatedly, Plaintiff's Motion to Strike the Declaration of Diane Rowell (ECF No. 96) is **DENIED**.

**DONE and ORDERED** in chambers, at Miami, Florida, on August 24, 2012.

ROBERT N. SCOLA, JR.
UNITED STATES DISTRICT JUDGE

Copies to:
*Counsel of record*

---

[2] While a summary may be admitted into evidence to prove the content of voluminous records under Federal Rule of Evidence 1006, it is not permissible for the summary to be prepared by the attorney trying the case. *United States v. Grajales-Montoya*, 117 F.3d 356, 361 (8th Cir. 1997); *see also* R. Regulating Fla. Bar 4-3.7 (A lawyer "shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness on behalf of the client."). The Court has accepted Rossenwasser's summary for purposes of ruling on the summary judgment motion, *i.e.*, to determine that there exists evidence to establish a genuine issue as to whether Allscripts violated the EPA. At trial, however, it does not appear that a Rule 1006 summary that was prepared by the proponent's attorney would be admissible.